J-S56005-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ELIZABETH ANN EBERHART, | |
| Appellant | No. 152 MDA 2015 |

Appeal from the Judgment of Sentence November 17, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-SA-0000203-2014

BEFORE: SHOGAN, JENKINS, and PLATT,* JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED NOVEMBER 13, 2015**

Appellant, Elizabeth Ann Eberhart, appeals from the judgment of sentence entered following her conviction of disorderly conduct. After careful consideration, we vacate Appellant's judgment of sentence.

The trial court summarized the factual history of this case as follows:

> Sandra B[ry]ington testified that on July 11, 2014, in the early morning hours, she had taken her three children and two of their friends outside to play. The children wanted to ride their bikes and scooters and Ms. Bryington wanted to take the garbage out. Ms. Bryington's youngest son had gotten his wheels s[t]uck on the sidewalk. After Ms. Bryington got the child unstuck, she heard someone call out "you need to watch your f---ing (expletive deleted) kids." Ms. Bryington noticed that [Appellant] was standing there with another lady and [Appellant]

---

* Retired Senior Judge assigned to the Superior Court.

starting calling Ms. Bryington a "f ---ing (expletive deleted) bitch."

Ms. Bryington further testified that since she had the children all around her and she did not know who this lady was, [she] asked [Appellant] and [Appellant's] friend if they would like the police called. One of the neighbors told Ms. Bryington that she needed to call the state police. At this point, [Appellant] had exited her vehicle and started walking towards Ms. Bryington yelling "you don't know who the f - -- (expletive deleted) you're messing with." Once this happened, Ms. Bryington had the children stay with neighbors and borrowed a neighbor's cell phone to call the state police. Ms. Byrington stayed with neighbors until the police told her she could go back to her apartment.

Trooper Nicholas T. Zulick, a Pennsylvania State Police employee, testified that on the date of the incident he observed that Ms. Bryington was visibly upset and was crying over an incident that occurred earlier in the day. Trooper Zulick talked to neighbors who verified that the incident that [sic] had taken place. Trooper Zulick testified that "everybody he talked to said that there was cursing and yelling that they could clearly hear away from the scene."

[Appellant] testified that she lives in Millersburg and was visiting a friend that day. [Appellant] testified that she was very happy that day and wanted to show her friend a "new-to-me vehicle" that she recently purchased. [Appellant] continued to testify that she had to go to work and did not have time to have a cigarette with her friend. When [Appellant] got into her car, her friend told her to watch out for the children behind her. [Appellant] testified that she did not exit the vehicle and exchange words with Ms. Bryington. However, [Appellant] continue[d] to testify that words were exchanged and she said "do you think I'm afraid of you?" At this point, [Appellant's] friend had gone inside because she did not want to "put up with this."

Trial Court Opinion, 2/10/15, at 2-3 (internal citations omitted).

As a result of this incident, Appellant was charged with disorderly conduct[1] and harassment.[2]  On November 17, 2014, following a summary appeal hearing before the common pleas court, Appellant was found guilty of disorderly conduct and sentenced to pay a $100 fine, along with costs in the amount of $125.50 and a judicial fee of $33.50.  Appellant was acquitted of harassment.

Appellant filed a post-sentence motion, and the Commonwealth filed an answer to that motion.  By order entered December 29, 2014, the trial court denied Appellant's post-sentence motion.  Appellant filed a timely notice of appeal to this Court on January 13, 2015.  Both Appellant and the trial court complied with the requirements of Pa.R.A.P. 1925.

Appellant presents the following issues for our review, which we reproduce verbatim:

> I.    Whether the evidence presented by the Commonwealth was insufficient to prove beyond a reasonable doubt that Appellant committed the crime of disorderly conduct where:
>
>> A)    the Commonwealth failed to prove that Appellant used obscene language or made an obscene gesture?
>>
>> B)    the Commonwealth failed to prove that Appellant acted with the intent to cause public inconvenience, annoyance or alarm, or recklessly created a risk thereof, and

_____

[1] 18 Pa.C.S. § 5503(a)(3).

[2] 18 Pa.C.S. § 2709(a)(3).

J-S56005-15

Appellant's Brief at 5.

We start by noting that although Appellant presents two distinct issues for review in her appellate brief, a review of her Pa.R.A.P. 1925(b) statement reveals that she listed only one of those issues in the statement before the trial court.[3] Thus, only Appellant's first issue has been preserved for our review. **See Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998)) ("Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived.").

In support of her remaining issue, Appellant argues that the evidence was insufficient to prove that she engaged in disorderly conduct. Appellant's Brief at 11. Specifically, Appellant contends that the Commonwealth failed to prove that Appellant used obscene language or made an obscene gesture. **Id.** While the record supports the conclusion that Appellant used the "F-word" to express anger, Appellant asserts her statements had nothing to do with sex, and thus failed to support the conclusion that the "words appeal to

_____

[3] Appellant identified the following single issue in her Pa.R.A.P. 1925(b) statement:

> The Commonwealth failed to present sufficient evidence to sustain Appellant's conviction for Disorderly Conduct, 18 Pa.C.S.A. 5503(a)(3), where the Commonwealth failed to prove that the Appellant used obscene language or made an obscene gesture.

Pa.R.A.P. 1925(b) statement, 2/2/15, at 1.

the prurient interest or a depiction, in a patently offensive way, of relevant sexual conduct." *Id.* at 12-13.

Our standard of review when considering a challenge to the sufficiency of the evidence is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa. Super. 2003).

Disorderly conduct under 18 Pa.C.S. § 5503(a)(3) is defined as follows:

> **(a) Offense defined.** -- A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> * * *
>
> (3) uses obscene language, or makes an obscene gesture[.]

- 5 -

18 Pa.C.S. § 5503(a)(3). This Court has explained the following in addressing this provision:

> The first inquiry is what is the definition of "obscene" for purposes of 18 Pa.C.S. § 5503(a)(3). This Court has held that, for purposes of a disorderly conduct statute prohibiting the use of obscene language, language is obscene if it meets the test set forth in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973):
>
> > (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Commonwealth v. McCoy*, 69 A.3d 658, 665 (Pa. Super. 2013).

> Moreover, the offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community. It has a specific purpose; it has a definite objective, it is intended to preserve the public peace; it has thus a limited periphery beyond which the prosecuting authorities have no right to transgress any more that the alleged criminal has the right to operate within its clearly outlined circumference.

*Id.*

In addressing this issue, the trial court provided the following analysis:

> Here, [Appellant] used "obscene language." Ms. Bryington was outside with *her children and her children's friends* when [Appellant] approached her and started yelling "watch your f---ing kids" and calling her a "f---ing bitch." [Appellant] further yelled "you don't know who the f--- you are messing with." All of this took place *in front of the children*. The definition of obscene, for purposes of Section 5503(a) has been defined by *Miller [v. California*, 413 U.S. 15, 93 S.Ct. 2607 (1973)].

- 6 -

Circumstances surrounding words can be crucial. In this instance, [Appellant's] use of language was highly offensive to Ms. Bryington and her neighbors. One of the neighbors told Ms. Bryington that she needed to call the state police. This neighbor found that [Appellant's] conduct and choice use of words were highly offensive such that the state police needed to be called. Furthermore, children should not be subjected to this type of language. Ms. Bryington had children ranging from four (4) years old and up. At such a young age, children should not be subjected to such use of language. In an ever evolving society, some may say that this language is the everyday "norm." Some may say that children should be "used to this type of language". However, in this instance, a caring parent with her children and her children's friends was concerned about what was being said in front of children. Ms. Bryington was visibly upset about the language and immediately took the children to a neighbor's house, while she called the state police. One neighbor was so concerned that he or she told Ms. Bryington that the state police needed to be called. This type of language, when looking at the circumstances surrounding the situation, was obscene in nature.

Because [Appellant] got out of her car and approached Ms. Bryington yelling obscenities at her, all the while this was happening *in front of children* and concerned neighbors, [Appellant] is found in violation of Section 5503(a)(3) Disorderly Conduct.

Trial Court Opinion, 2/10/15, at 5-6 (emphasis in original).

We have reviewed the record and conclude there is no evidence that Appellant's language and use of the "f-word" was intended to appeal to anyone's prurient interest, nor did it describe in a patently offensive way sexual conduct. Thus, although the language may have been offensive, it does not meet the criteria of obscene language or gestures as defined by the statute. *See McCoy*, 69 A.3d at 666 (holding that a defendant's chant of "fuck the police" during a funeral procession of an officer killed in the line of duty was not obscene as defined under 18 Pa.C.S. § 5503(a)(3) because it

was not "intended to appeal to anyone's prurient interest nor did it describe, in a patently offensive way sexual conduct."); *see also Commonwealth v. Kelly*, 758 A.2d 1284, 1288 (Pa. Super. 2000) (holding that while appellant's use of the "F-word" and the middle finger "were disrespectful, insulting and offensive, they were . . . not 'obscene' within the meaning of Section 5503(a)(3)."); *Commonwealth v. Bryner*, 652 A.2d 909, 912 (Pa. Super. 1995) (finding that shouting "go to hell, Betsy" in a public place, even if provocative or annoying, was not "obscene" pursuant to section 5503(a)(3) of the Pennsylvania disorderly conduct statute because it did not appeal to anyone's prurient interests). Because there was no evidence of obscene language or gestures, we are constrained to agree with Appellant that her conviction of disorderly conduct must be set aside.[4]

_____

[4] We note the trial court's finding that this language was "obscene" based on the surrounding circumstances, specifically that these statements were made in front of children and that the statements were "highly offensive" to Ms. Bryington and her neighbors. Although such factors do not make the language "obscene" under 18 Pa.C.S. § 5503(a)(3) for reasons outlined above, such circumstances and evidence would have been relevant to an offense under section 5503(a)(1) ("engages in fighting or threatening, or in violent or tumultuous behavior") or section 5503(a)(4) ("creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor") of the disorderly conduct statute. As stated, however, Appellant was not charged with either of these provisions.

- 8 -

Judgment of sentence vacated.  Jurisdiction relinquished.

Judge Jenkins joins the Memorandum.

Judge Platt files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/13/2015